UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARBARA JEANNE CARL,

       Plaintiff,                            Civil Action No. 13-10747

v.                                    HON. PAUL D. BORMAN
                                    U.S. District Judge
                                    HON. R.  STEVEN WHALEN
COMMISSIONER OF SOCIAL        U.S. Magistrate Judge
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Barbara Jeanne Carl ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a partially favorable decision Defendant Commissioner denying her benefits between the alleged onset date of August 6, 2007 up to January 17, 2010, but awarding her benefits as of her 50th birthday of January 17, 2010.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

On April 8, 2010, Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging disability as of August 6, 2007

(Tr. 123-129, 130-134). After the initial denial of the claim, she filed a request for an administrative hearing, held on August 11, 2011 before Administrative Law Judge ("ALJ") Paul Jones (Tr. 25). Plaintiff, represented by attorney Patrick Gannaway, testified (Tr. 29-48), as did vocational expert ("VE") Sharon Princer (Tr. 48-52). On September 23, 2011, ALJ Jones determined that between August 6, 2007 through January 16, 2010, Plaintiff was able to perform unskilled, sedentary work and was thus not disabled[1] (Tr. 17-21), but her inability perform work at a greater exertional level than sedentary rendered her disabled as of her 50th birthday of January 17, 2010 (Tr. 19-21). On December 18, 2012, the Appeals Council denied review (Tr. 1-3). Plaintiff filed for judicial review of the Commissioner's decision on February 21, 2013.

## BACKGROUND FACTS

Plaintiff, born January 17, 1960, was 51 at the time of the administrative decision (Tr. 21, 123). She completed high school, one year of college, and received training as a phlebotomist (Tr. 144). She worked previously for a bus company and as a laboratory technician (Tr. 145). Her application for benefits alleges disability as a result of cardiac

---

[1]

Under the Social Security Administration's regulations, a person (1) who is 'closely approaching advanced age' (that is, a person between the ages of fifty and fifty-four, see 20 C.F.R. § 404.1563(d)), (2) who has a high school education that does not provide for direct entry into skilled work, and (3) whose previous work experience was skilled or semiskilled work that is not transferable to other jobs in the national economy, is generally considered disabled ... if her impairments limit her 'maximum sustained work capability' to sedentary work." *Rogers v. Commissioner of Social Security*, 2000 WL 799332, * 1 (6th Cir. June 9, 2000). "Such a claimant is not considered disabled if she can do light or medium work." *Id.*; 20 C.F.R. Part 404, Subpart P, App. 2, Rule 201.14.

conditions and coronary artery disease (Tr. 143).

A.      **Plaintiff's Testimony**

Plaintiff offered the following testimony:

She lived in a single-family home with her husband, two adult sons, and three grandchildren (Tr. 30). Her husband worked for Michigan Department of Corrections, her older son worked as a roofer, and her younger son was disabled (Tr. 30-31). She stood 5' and weighed 132 pounds (Tr. 31). She graduated from high school and had "a couple of years of college" at a local community college (Tr. 31). She received some phlebotomy training but did not receive a certification (Tr. 31). She could read, write, and perform simple calculations (Tr. 31). She believed that she would receive a pension from her former work at the age of 58 (Tr. 32). She was not currently employed or receiving unemployment insurance (Tr. 32). Her last job was as a bus aide for her handicapped son (Tr. 33). The job ended in 2005 when her son graduated from high school (Tr. 33).

She did not work in 2006 (Tr. 34). Her own health issues between 2007 and the present prevented her from performing any work (Tr. 34-35). Between 1996 and 2001, she performed the combined work of a phlebotomist and "central processing person" (Tr. 35). The phlebotomist position did not require more than 10 pounds lifting but was performed primarily in a standing position (Tr. 36-37). The central processing position required her to lift up to 20 pounds (Tr. 38).

One of her adult daughter's children lived with Plaintiff's family, along with two of her older son's children (Tr. 40-41). Plaintiff continued to smoke, contrary to the advice of

-3-

her treating physician (Tr. 41). She experienced difficulty quitting (Tr. 41). She was told that she had "anxiety and stress" for which she received Xanax and Celexa but had not sought counseling (Tr. 41-42).

She experienced a heart attack on August 6, 2007, since which time her condition had worsened (Tr. 43). She opined that she would be unable to return to her work as a phlebotomist due to the stressful nature of the job (Tr. 44). Due to sleep disturbances, she was unable to sleep more than four to five hours a night, but took daily naps for up to three hours each day (Tr. 44). She currently took Plavix, nitroglycerin, Ranexa, Ambien, Imdur, Cardizem, Celexa, Flexeril, Norco, aspirin, Xanax, and Prevacid (Tr. 45). She took the nitroglycerin up to seven times a day due to angina attacks (Tr. 45). She had attempted to quit smoking on seven occasions, noting that she stopped smoking at one point for four months (Tr. 47). She currently smoked a half pack of cigarettes each day (Tr. 47). She did not participate in cardiac rehabilitation directly after her heart attack, but ultimately completed the program (Tr. 47).

### B. Medical Evidence[2]

March, 2007 treating notes state that Plaintiff was unemployed but babysat her grandchildren (Tr. 362). Plaintiff underwent an angioplasty procedure with the implantation

---

[2]Plaintiff argues, in effect, that she was unable to perform even sedentary work between August 6, 2007 and her 50th birthday. Therefore, while all of medical records have been reviewed in full, the evidence relating to her condition before her 50th birthday is the focus of the present discussion.

of a cardiac stent on August 6, 2007 after experiencing chest pains and shortness of breath followed by cardiac arrest (Tr. 313, 326). Testing was negative for deep vein thrombosis of the lower extremities (Tr. 217). She was discharged one week later in stable condition (Tr. 326-327). Treating notes created after her release state that she reported irritability but denied depression (Tr. 237). Results from a stress test performed later the same month showed normal results (Tr. 189). An echocardiogram taken the day after Plaintiff's heart attack showed essentially normal results with a slightly reduced ejection fraction (Tr. 219-220, 331-333). In October, 2007, cardiologist George E. Kleiber, D.O. opined that Plaintiff's reports of daily chest pain had "a significant emotional component" due to her adults children's medical conditions (Tr. 358). December, 2007 imaging studies of the heart and lungs were unremarkable (Tr. 272). The same month, a CT of brain, taken in response to reports of headaches, was also unremarkable (Tr. 273, 478-480). Plaintiff exhibited a normal mood and affect and was fully oriented (Tr. 480). A stress test was discontinued as a result of fatigue (Tr. 288). A heart catheterization performed after Plaintiff reported jaw numbness was unremarkable except for heart spasms (Tr. 286, 496-497).

January, 2008 notes state that Plaintiff experienced "some chest pressure" and currently had a "full plate" taking care of her grandchildren (Tr. 234, 500). The same month, she sought emergency treatment after falling in the shower (Tr. 305). She appeared fully oriented (Tr. 510). A CT of the brain was negative for abnormalities (Tr. 305, 522). A chest x-ray was essentially unremarkable (Tr. 270, 523). May, 2008 treating notes state that Plaintiff experienced stress taking care of five grandchildren (Tr. 231). The following

-5-

month, Plaintiff sought treatment for abdominal pain (Tr. 528).

In February, 2009, Plaintiff underwent another cardiac catheterization (Tr. 303). Results were unremarkable with the exception of spasms (Tr. 303). In March, 2009, Dr. Kleiber noted that the recent heart catheterization showed an intact stent and no obstructive disease (Tr. 356, 353). He noted that cardiac spasms were precipitated by smoking and stress (Tr. 353). Dr. Kleiber also noted an improved ejection fraction (Tr. 354). The following month, imaging studies performed in response to an angina attack showed unremarkable results (Tr. 284). In June, 2009, Plaintiff experienced an uptake in stress due to family problems (Tr. 227). In September, 2009, Dr. Kleiber noted that Plaintiff was doing "fairly well" except for her failure to quite smoking which was causing cardiac spasms (Tr. 352, 657). Plaintiff reported she experienced current stress as a result of babysitting for several grandchildren (Tr. 352).

In February, 2010, Plaintiff sought emergency treatment after experiencing chest and jaw pain (Tr. 374). She described herself as a "stay-at-home-mom" (Tr. 374). Imaging studies were negative for abnormalities (Tr. 377, 383). She appeared fully oriented and in no acute distress (Tr. 559). She was diagnosed with angina (Tr. 374). She reported that she currently smoked less than a pack of cigarettes a day (Tr. 549). Imaging studies, including a stress test, were unremarkable (Tr. 557, 567). She was again advised to stop smoking (Tr. 573). In June, 2010, Plaintiff again sought emergency treatment for dizziness and facial numbness (Tr. 414, 576). She appeared fully oriented (Tr. 602). A cardiovascular exam was unremarkable (Tr. 414, 633). Treating notes indicate "possible acute hyperventilation

-6-

syndrome" (Tr. 579). Discharge records note that Plaintiff experienced "multiple social stressors" (Tr. 415). In December, 2010, Plaintiff again sought treatment for chest pain (Tr. 612). Discharge notes again state that imaging studies and testing were negative for an acute condition (Tr. 636). Plaintiff sought emergency treatment in April, 2011 after being hit in the head by her son's girlfriend (Tr. 699). An EKG was unremarkable (Tr. 705).

In March, 2011, Miriam Gibson, M.D. reviewed Plaintiff's medical history, noting current complaints of anxiety (Tr. 711). Plaintiff denied medication side effects but reported social stressors and problems staying asleep (Tr. 711). Plaintiff appeared fully oriented (Tr. 712, 715). In June, 2011, Plaintiff reported stress as a result of a custody battle with her daughter and her husband's workplace injury (Tr. 717-718).

The following month, Dr. Gibson completed a Physical Residual Functional Capacity Questionnaire, noting that while Plaintiff had treated at the same clinic for five years, Dr. Gibson had been treating Plaintiff for only two (Tr. 720). She diagnosed Plaintiff with chronic rib and thoracic spine pain (Tr. 720). She found that Plaintiff also experienced anxiety (Tr. 721). She found that Plaintiff's pain would interfere with attention and concentration frequently (Tr. 721). She found that Plaintiff was capable of moderate stress jobs (non-physical) but only low stress jobs where the stress involved physical issues (Tr. 721). She found that Plaintiff was unable to sit or stand for more than two hours at a time but could either sit or stand for a total of four hours each in an eight-hour work day (Tr. 722). She found that Plaintiff required a job where she could change positions at will, but could lift up to 50 pounds (rarely) and 10 pounds frequently (Tr. 722). She found that Plaintiff's

-7-

conditions would preclude work approximately twice a month (Tr. 723). Dr. Gibson stated that her assessment applied to Plaintiff's limitations for "at least 3 years" (Tr. 723).

The following month, Dr. Kleiber completed a Cardiac Residual Functional Capacity Questionnaire, finding that Plaintiff experienced chest pain, angina, shortness of breath, fatigue, and weakness (Tr. 724). He opined that Plaintiff's need to care for young children was "a big factor" in creating stress (Tr. 724). He found Plaintiff incapable of even low stress jobs (Tr. 725). He found Plaintiff experienced anxiety related symptoms (Tr. 725). He found that the cardiac symptoms would create concentrational problems on an occasional basis (Tr. 725). He found that medication side effects did not affect Plaintiff's functioning (Tr. 725). He did not find that Plaintiff's legs needed to be elevated or that she would require unscheduled breaks (Tr. 726). He found that Plaintiff could lift 20 pounds, twist, stoop, crouch, and climb on an occasional basis (Tr. 726). He found that Plaintiff should avoid concentrated exposure to environmental hazards and temperature extremes (Tr. He found that Plaintiff would be required to miss more than four days a month due to symptomology (Tr. 727). He concluded by stating that Plaintiff had experienced the above-described limitations since August, 2007 (Tr. 727).

## C. Vocational Testimony

VE Sharon Princer classified Plaintiff's former jobs as a phlebotomist and central

-8-

processor (lab assistant) as semiskilled and exertionally light[3] (Tr. 49-51).  The ALJ then

posed the following hypothetical question to the VE, taking into account Plaintiff's age,

education, and work background:

> [A]ssume a person of the Claimant's age, education, experience, who's able
> to do sedentary work, lifting up to 10 pounds occasionally; standing or
> walking for about two hours, and sitting for up to six hours in an eight-hour
> work day, with normal breaks; whose work is limited to simple, routine, and
> repetitive tasks? (Tr. 51).

The VE testified that the hypothetical limitations would preclude Plaintiff's former jobs but

would allow the sedentary, unskilled jobs of surveillance monitor (1,200 positions in the

lower peninsula of Michigan); bookkeeping/accounting clerk and auditing clerk (1,783); and

reception/information clerk (2,481) (Tr. 51).  In response to questioning by Plaintiff's

attorney, the VE testified that the need to take three 30-minute unscheduled breaks every day

as a result of fatigue would preclude all of the above jobs (Tr. 52).

### D.     The ALJ's Decision

Citing the medical records, the ALJ found that since August 6, 2007, Plaintiff

experienced the severe impairments of "history of myocardial infarction; coronary artery

disease, status post revascularization; angina; headaches; tobacco abuse; [and] anxiety

---

[3]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds
at a time and occasionally lifting or carrying articles like docket files, ledgers, and small
tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or
carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50
pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and
that exertionally *heavy*  work "involves lifting no more than 100 pounds at a time with
frequent lifting or carrying of objects weighing up to 50 pounds.

disorder" but that none of the conditions met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 14-16). He determined that Plaintiff retained the Residual Functional Capacity ("RFC") for exertionally sedentary work within the following parameters:

> [S]he can lift and carry 10 pounds occasionally; she can sit six hours, and stand and or walk two hours in an 8-hour workday; she is limited to performing simple, routine and repetitive tasks (Tr. 17).

Citing the VE's testimony, the ALJ concluded that prior to Plaintiff's 50th birthday she could perform the sedentary work of a surveillance system monitor, bookkeeping clerk, and receptionist/information clerk (Tr. 20). He found that as of Plaintiff's 50th birthday on January 17, 2010, her inability to perform anything but sedentary work rendered her disabled (Tr. 20); *see fn 1, above.* The ALJ found that although Plaintiff's entitlement to DIB expired after June 30, 2008, her disability status as of her 50th birthday entitled her to SSI, provided that she could meet the financial requirements for SSI benefits (Tr. 20-21).

The ALJ discounted Plaintiff's allegations that she was unable to perform sedentary work prior to her 50th birthday, noting that the none of the objective studies performed since the August, 2007 heart attack showed "totally debilitating pathology" (Tr. 17-18). He observed that Plaintiff's condition "remained relatively stable, in spite of blatant treatment noncompliance in the form of tobacco abuse" (Tr. 18). He noted that Plaintiff did not require the use of a cane or walker (Tr. 18). He cited Plaintiff's acknowledgment that she continued to perform self-care tasks and laundry chores, clean, drive, shop, handle finances, and sew (Tr. 18).

-10-

The ALJ rejected Dr. Kleiber's August, 2011 assessment on the basis that it contradicted the "relatively benign" findings of "repeated cardiac workups" and the physician's own progress notes (Tr. 18). He gave limited weight to Dr. Gibson's July, 2011 appraisal, noting that her finding that Plaintiff could lift up to 50 pounds but experienced significant concentrational problems stood at odds with the preponderance of evidence (Tr. 18).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less than a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*,

-11-

884 F.2d 241, 245 (6ᵗʰ Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A.  The Treating Physician Analysis

Plaintiff argues first that the ALJ erred by rejecting Dr. Kleiber's August, 2011 disability opinion. *Plaintiff's Brief* at 13-16, *Docket #13.*  She contends that Dr. Kleiber's opinion is supported repeated emergency room visits and "multiple cardiac catheterizations

-12-

2:13-cv-10747-PDB-RSW   Doc # 21   Filed 02/28/14   Pg 13 of 20   Pg ID 836

and medical appointments. *Id.* at 15. Plaintiff also fault the ALJ for according only "limited weight" Dr. Gibson's July, 2011 assessment. *Id.* at 13 (citing Tr. 18).

An opinion of limitation or disability by a treating source is entitled to deference. "[I]f the opinion of the claimant's treating physician is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue, 573* F. 3d 263, 266 (6th Cir. 2009)(internal quotation marks omitted)(*citing Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir. 2004). Further,

> [i]f the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors--namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source--in determining what weight to give the opinion.

*Wilson,* at 544 (citing 20 C.F.R. 404.1527(c)(2-6)).

The failure to provide "good reasons" for rejecting a treating physician's opinion constitutes reversible error. *Gayheart v. Commisioner of Social Security,* 710 F. 3d 365, 376 (6th Cir. 2013)(citing *Wilson,* at 544-446). "[T]he Commissioner imposes on its decision-makers a clear duty to 'always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion.'" *Cole v. Astrue* 661 F.3d 931, 937 (6th Cir.2011); § 404.1527(c)(2). "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that

-13-

weight.'" *Gayheart,* at 376 (citing SSR 96-2p, 1996 WL 374188, *5 (1996)).

Plaintiff's argument that Dr. Kleiber's opinion was uncontradicted by other record evidence and thus, ought to have been adopted, is not well taken. The ALJ supported his rejection of the August, 2011 assessment by correctly noting that it was not supported by Dr. Kleiber's own progress notes or numerous diagnostic studies showing unremarkable results (Tr. 18). Plaintiff points out that she narrowly escaped death at the time of her August, 2007 cardiac arrest. *Plaintiff's Brief* at 15. However, the ALJ, while acknowledging the "near catastrophic cardiac event," noted that her condition since that time had remained "relatively stable" (Tr. 18). In rejecting Dr. Kleiber's assessment, the ALJ noted that Plaintiff's "rather exhaustive and repeated cardiac workups reflected relatively benign findings and were not suggestive of an inability to perform sustained sedentary work activities" (Tr. 18).

My own review of the record supports the ALJ's findings. Dr. Kleiber found that Plaintiff experienced stress as a result of the need to take care of her grandchildren (Tr. 724). However, the ALJ noted that Plaintiff reported good results from "anti-anxiety agents" (Tr. 18). He cited Plaintiff's admission that she was able to perform laundry chores, drive, shop, pay bills, and sew while taking care of her grandchildren full time (Tr. 18). Dr. Kleiber's opinion that Plaintiff was unable to perform even low stress work and would need be absent from work more than four times each month due to symptomology is contradicted by Plaintiff's ability to perform a wide range of activities on a regular basis (Tr. 725, 727). In the presence of contradicting substantial evidence, an ALJ may reject all or a portion of the

treating source's findings. *Warner v. Commissioner of Social Sec.,* 375 F.3d 387, 391-392 (6th Cir.2004).

Plaintiff also contends that the ALJ erred by giving limited weight to Dr. Gibson's evaluation. *Plaintiff's Brief* at 13. However, he does not offer any examples of how the ALJ "erred." The ALJ stated that he gave limited weight to Dr. Gibson's July, 2011 assessment, in part, because it *overstated* Plaintiff's abilities, noting that the finding that Plaintiff lift up to 50 pounds was not supported by the record as a whole (Tr. 18, 722). On the other hand, he correctly noted that Dr. Gibson's finding that Plaintiff's symptoms would interfere "frequently" with attention and concentration (Tr. 721) stood at odds with the treating physician's own notes showing Plaintiff "to be alert, well oriented and without obvious cognitive deficit" (Tr. 18). Because the treating analysis of Drs. Kleiber and Gibson's assessments is well supported and explained, remand on this basis is not warranted.

### B.  The Credibility Determination

Plaintiff makes a brief argument that the ALJ erred by rejecting her allegations of limitation. *Plaintiff's Brief* at 16-17. She contends that the ALJ's "boilerplate" statement that her claims were "not credible" (Tr. 17) did not constitute sufficient grounds to discount her claims. *Id.* She also faults the ALJ discrediting her claims on the basis that she continued to smoke. *Id.*

The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms. "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically

-15-

acceptable clinical and laboratory diagnostic techniques." 1996 WL 374186, *2.  The second prong of SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a consideration of the entire case record."*Id.* [4]

This argument is without merit.  The ALJ's "boilerplate" statement that the claims of limitation were not credible is followed by a page-long discussion of the evidence supporting his finding.  The ALJ noted that "the results of EKG, Doppler, radiographic, catheterization, echocardiogram stress, serology, and clinical evaluations" did not show "totally debilitating pathology" (Tr. 18).  He cited observations that Plaintiff walked without problems, showed a good range of motion, and the absence of neurological or musculoskeletal problems (Tr. 18).  He noted that Plaintiff's testimony that she required unscheduled naps was unsupported by the treating records (Tr. 18).  The ALJ also observed that despite reports of anxiety,

------

[4]In addition to an analysis of the medical evidence, C.F.R. 404.1529(c)(3) lists the factors to be considered in making a credibility determination:

 (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

Plaintiff reported good results from prescribed anti-anxiety medicine and had not sought psychiatric counseling or inpatient mental health treatment (Tr. 18).

Plaintiff objects to the ALJ's citation to her continued smoking in support of the credibility determination, citing *Fraley v. Secretary of H.H.S.,* 733 F.2d 437, 440 (6th Cir. 1984). *Plaintiff's Brief* at 16-17. *Fraley* holds in relevant part that a claimant's credibility cannot be discounted by his failure to undergo treatment if the recommended treatment cannot be shown to "restore [his] ability to work." *Id.* However, *Fraley* is inapplicable here. First, the ALJ found that Plaintiff was not disabled (prior to her 50th birthday) despite her failure to quit smoking. Second, the treating notes state that Plaintiff's heart spasms after the August, 2007 cardiac event were attributable to her continued tobacco use (Tr. 353). To the extent that Plaintiff's claims of limitation can be credited, she had been told by at least one treating source that smoking exacerbated those limitations (Tr. 352-353).

Further, the Sixth Circuit has held that smoking may be used to discount a claimant's allegations of disability. *See Sias v. Secretary of Health and Human Services* 861 F.2d 475, 480 (6th Cir. 1988)(" we can take judicial notice of the massive body of medical opinion . . . on the subject of cigarette smoking"); *Brown v. Social Security Administration* 2000 WL 876567, *1 (6th Cir. August 22, 2000)(claimant's continued smoking despite a diagnosis of chronic obstructive pulmonary disease "indicates that the condition is not disabling"). For these reasons, the deference generally accorded an ALJ's credibility determination is appropriate here. *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir.1993); *Anderson v. Bowen* 868 F.2d 921, 927 (7th Cir.1989) ( *citing Imani v.*

-17-

*Heckler,* 797 F.2d 508, 512 (7th Cir.1986)) (An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record' ").

### C. The Job Findings

Finally, Plaintiff makes a very brief argument that the job numbers cited by the VE do not constitute a "significant" number. *Plaintiff's Brief* at 17-18.

Citing the VE's job testimony, the ALJ determined that Plaintiff could perform the jobs of monitor (1,200 positions in the lower peninsula of Michigan); bookkeeping/accounting clerk and auditing clerk (1,783); and receptions/information clerk (2,481) for a total of 5464 jobs in the regional economy (Tr. 20, 51).

The Sixth Circuit has recognized that it is "impossible to set forth one special number as the boundary between a 'significant number' and an insignificant number of jobs," *Born v. Sec'y of Health & Human Servs.*, 923 F.2d 1168, 1174 (6th Cir.1990); 20 C.F.R. 404.1569 (citing *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir.1988))(1,350–1,800 jobs in the local economy constitute a significant number); *See also Martin v. Commissioner of Social Security,* 170 Fed.Appx. 369, 375, 2006 WL 509393, *5 (6th Cir. March 1, 2006) (870 jobs in the claimant's geographic region a significant number). However, I am unaware of any case law suggesting that 5,464 jobs in the lower peninsula of Michigan or a region with a similar population does not constitute a significant number. While Plaintiff relies on *Waters v. Secretary of HHS,* 827 F. Supp 446, 448 (W.D. Mich. 1992) for the proposition that 1,000 jobs in the state-wide economy (for an individual living in the upper peninsula of Michigan)

-18-

does not constitute a significant number, present Plaintiff lives at approximately the geographical midpoint of the lower peninsula. Her argument that the job findings do not constitute a significant number for an individual in her area is thus unavailing.

In closing, I note that my recommendation to uphold the Commission's decision should not be read to trivialize Plaintiff's family problems or her 2007 cardiac arrest. However, because the ALJ's partially favorable determination was well within the "zone of choice" accorded the administrative fact-finder, it should be remain undisturbed. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

-19-

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: February 28, 2014                    s/R. Steven Whalen
                                            R. STEVEN WHALEN
                                            UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document was sent to parties of record on March 3, 2014, electronically and/or by U.S. Mail.

                                            s/Michael Williams
                                            Case Manager to the
                                            Honorable R. Steven Whalen